IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DANNY RAVIART,

    Petitioner,                   No. CIV 03-0164 MCE EFB P

    vs.

JAMES YATES, Warden,

    Respondent.             FINDINGS AND RECOMMENDATIONS

                              /

      Petitioner is a state prisoner proceeding *in propria persona* with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2000 judgment of conviction entered against him in Sacramento County Superior Court on two counts of robbery, one count of being a convicted felon in possession of a firearm, one count of possession of methamphetamine, and two counts of assault with a firearm on a peace officer. He seeks relief on the grounds that: (1) insufficient evidence supported his conviction on the charge of assault with a firearm; (2) instructional error violated his right to due process; and (3) his right to due process was violated when the trial court engaged in improper questioning of witnesses. Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's application for habeas corpus relief be denied.

/////

1

I.  **Procedural and Factual Background**[1]

In late February 1999, defendant became a suspect in a series of robberies, some of them armed, that had occurred in the Sacramento area between January 26 and February 19. On February 24, 1999, law enforcement officers learned defendant was at a motel on Jibboom Street. Among the officers who went there that evening to arrest defendant were Sacramento Police Officers John Keller and Joe Wagstaff. In a confrontation with defendant outside the motel, Officers Keller and Wagstaff shot defendant several times after he pointed a handgun at Officer Keller.

Defendant was charged in an amended information with eleven counts of robbery, one count of attempted robbery, six counts of being a convicted felon in possession of a firearm, one count of unlawful taking of a vehicle, one count of possession of methamphetamine, and two counts of assault with a firearm on a peace officer. The information also alleged numerous weapons enhancements and prior felony convictions.

The case was tried to a jury in November 1999. The court granted defendant's motion for judgment of acquittal on four robbery counts and one felon in possession of a firearm count due to insufficient evidence. The prosecution dismissed another felon in possession of a firearm count during closing argument. The jury found defendant guilty of two of the seven remaining robbery counts, one of the four remaining felon in possession of a firearm counts, the possession of methamphetamine count, and both counts of assault with a firearm on a peace officer. The jury was unable to reach verdicts on the remaining 10 counts, and the court granted a mistrial on those charges. After finding true the prior conviction allegations, the court sentenced defendant under the "Three Strikes" law to six consecutive terms of 25 years to life, with one term stayed pursuant to Penal Code section 654 and with 26 additional years for various enhancements.

II.  **Analysis**

**A.  Standards for a Writ of Habeas Corpus**

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in *People v. Raviart*, 93 Cal.App.4th 258 (2001).

2

1         determined by the Supreme Court of the United States; or

2         (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the
3         State court proceeding.

4   28 U.S.C. § 2254(d).

5         Under section 2254(d)(1), a state court decision is "contrary to" clearly established 6 United States Supreme Court precedents "if it 'applies a rule that contradicts the governing law 7 set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are materially 8 indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a different 9 result. *Early v. Packer*, 537 U.S. 3, 8 (2002) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 10 (2000)).

11         Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas 12 court may grant the writ if the state court identifies the correct governing legal principle from the 13 Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's 14 case. *Williams*, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because 15 that court concludes in its independent judgment that the relevant state-court decision applied 16 clearly established federal law erroneously or incorrectly. Rather, that application must also be 17 unreasonable." *Id*. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (it is "not 18 enough that a federal habeas court, in its independent review of the legal question, is left with a 19 'firm conviction' that the state court was 'erroneous.'")

20         The court looks to the last reasoned state court decision as the basis for the state court 21 judgment. *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002). Where the state court reaches a 22 decision on the merits but provides no reasoning to support its conclusion, a federal 23 habeas court independently reviews the record to determine whether habeas corpus relief is 24 available under section 2254(d). *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

25 ////

26 ////

**B. Petitioner's Claims**

**1. Sufficiency of the Evidence**

Petitioner's first claim is that the evidence admitted at his trial is insufficient to support his conviction on the charge of assault with a firearm on Officer Wagstaff. Petitioner notes that he pointed his gun at Officer Keller, not Officer Wagstaff, and that immediately after he did so he was shot and fell to the ground. He claims that Officer Wagstaff was "sheltered around the corner" and that "there was no evidence presented that appellant pointed the gun at Wagstaff at any time, that [he] knew Wagstaff was present, that any threat against him was made or that Wagstaff was injured." Pet., Attach. at 1. Petitioner argues, "the only act performed by [petitioner] upon which an assault charge could be based was the single silent act of pointing the gun at Officer Keller." *Id*. at 2.

Petitioner's claim in this regard was rejected by the California Court of Appeal in a published decision on petitioner's direct appeal, and by the California Supreme Court without comment on petition for review. The California Court of Appeal explained the relevant California law and the reasoning behind its decision as follows:

> "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (Pen. Code, § 240.) Defendant suggests there was no evidence he attempted to injure Officer Wagstaff because there was no evidence he ever pointed his gun at Wagstaff. Defendant also contends there was no evidence he had the present ability to injure Officer Wagstaff because Wagstaff was in a "protected position," sheltered by the corner of the motel, when the shooting occurred.
>
> Assault with a deadly weapon can be committed by pointing a gun at another person (*People v. Laya* (1954) 123 Cal.App.2d 7, 16), but it is not necessary to actually point the gun directly at the other person to commit the crime. Three examples will illustrate the point.
>
> In *People v. McMakin* (1858) 8 Cal.547, there was evidence the defendant pointed a revolver toward another person, "but with the instrument so pointed that the ball would strike the ground before it reached the witness, had the pistol been discharged." (*Ibid.*) The Supreme Court affirmed the defendant's conviction for assault, stating: "Holding up a fist in a menacing manner, drawing

4

a sword or bayonet, presenting a gun at a person who is within its range, have been held to constitute an assault. So any other similar act, accompanied by such circumstances as denote an intention existing at the time, coupled with a present ability of using actual violence against the person of another, will be considered an assault . . . . [¶] . . . [¶] . . . [W]hen the party draws the weapon, although he does not directly point it at the other, but holds it in such a position as enables him to use it before the other party could defend himself, at the same time declaring his determination to use it against the other, the jury are fully warranted in finding that such was his intention." (*Id.* at pp. 548-549.)

In *People v. Hunter* (1925) 71 Cal.App.315, there was evidence the defendant attempted to draw a pistol from his sock to shoot his wife, but she jumped out the window before he could do so. (*Id.* at pp. 317-318.) On appeal, the defendant contended the evidence was "insufficient to prove the alleged assault in that it does not show that the defendant attempted to use the weapon." (*Id.* at p. 318.) The court disagreed, stating: The evidence is ample to show that the defendant had the intention and the present ability to kill his wife. The only question remaining is whether he attempted to carry his purpose into execution. To accomplish that purpose, it was necessary for him to take the gun from his sock, to point it at his wife, and to pull the trigger. Any one of these would constitute an overt act toward the immediate accomplishment of the intended crime. He was endeavoring to take the gun from his sock when his wife thwarted the attempt to kill her by jumping out of the window. Naturally she did not wait to see whether he succeeded in getting hold of the gun or whether he pointed it at her, and it is immaterial whether he did either. The actual transaction had commenced which would have ended in murder if it had not been interrupted." (*Id.* at p. 319.)

Finally, in *People v. Thompson* (1949) 93 Cal.App.2d 780, there was evidence the defendant pointed a revolver toward two sheriff's deputies, aiming between them and pointing the gun downward. The appellate court held the defendant's actions were sufficient to support his conviction on two counts of assault with a deadly weapon, noting that "[w]hile [the defendant] did not point the gun directly at [the deputies] or either of them, it was in a position to be used instantly." (*Id.* at p. 782.)

In light of the foregoing authorities, and viewing the evidence in the light most favorable to the judgment, there is substantial evidence in the record to support the jury's finding that defendant assaulted both officers in the confrontation outside the motel. Officer Keller testified that he and Officer Wagstaff, who has a canine partner, decided to arrest defendant as he and a female companion were getting into a car on the south side of the motel. As the officers were approaching the motel parking lot in their vehicle, a California Highway Patrol unit not involved in

5

defendant's arrest pulled in across the street and illuminated the parking lot with its headlights. Defendant and his companion headed back toward their motel room, and Officers Keller and Wagstaff followed in an attempt to apprehend defendant before he got back into the room.

Officer Keller testified that when he rounded the stairway at the corner of the building in pursuit of defendant, Officer Wagstaff was to his left and slightly ahead of him, although he did not know whether Wagstaff had been on the walkway between the stairway and the building or had rounded the stairway ahead of him. Officer Keller testified that he "came around the stairs wide" because he knew Officer Wagstaff was to his left toward the building, and he was concerned about getting bit by Officer Wagstaff's dog. As Officer Keller came around the corner, he saw defendant pointing a chrome handgun directly at him. At the same time, he heard Officer Wagstaff yell "Gun." Both officers fired at defendant. Officer Keller testified that when he fired, Officer Wagstaff was crouching at the corner of the building, partially behind the building but with his arm extended around the corner to fire at defendant. Officer Keller fired five rounds, until defendant was on the ground. As he did so, he moved to the corner where Wagstaff was, where they both took cover. Keller testified that it was approximately five feet from where he started firing to where he took cover with Wagstaff behind the corner of the building. When there was no return fire, they came out from behind the corner and saw defendant on the ground with the gun slightly above his head.

Douglas Moutinho, an agent with the California Department of Justice, Bureau of Narcotic Enforcement, Violence Suppression Unit, testified that he was behind Officer Wagstaff as Wagstaff and Keller approached the corner of the motel in pursuit of defendant. Moutinho saw Wagstaff pass the corner of the building and step out into the open. Moutinho heard Wagstaff give some kind of command to defendant, "instructing him to put his hands up and orders like that," then heard Wagstaff yell "Gun" several times and dive back to the corner of the building. Moutinho then saw Wagstaff fire back down the hallway toward defendant while crouching at the corner of the building.

Curtes McPherson testified she was with defendant at the motel the day he was shot. Defendant told her the police were looking for him. After the telephone in the motel room rang and no one was on the other end of the line, defendant told McPherson it was time to go, and they began loading the car. At defendant's request, McPherson went back to the room to see if defendant had left anything inside. Before she got back outside, defendant came back into the room and suggested they walk out as a couple "because there was a cop outside." As they stepped outside, McPherson saw "lots of police coming around the corner and yelling, 'Stop or I

will shoot.'" She then heard five shots and saw defendant on the ground on his back. She did not see defendant draw a gun, but she had seen defendant remove a chrome handgun from the waistband of his pants while they were in the motel room. McPherson also testified that while they were talking in the motel room, defendant had told her "that he knew when he was approached by the cops, they would probably take him out, and he said he would be taking a cop out with him, and he would not go out alone."

Officer Keller and another officer both testified that when they approached defendant after the shooting, they saw a chrome semiautomatic handgun on the ground about a foot away from him. Another officer later removed one bullet from the chamber of the gun and five from the gun's magazine.

From the foregoing evidence, the jury could have found beyond a reasonable doubt that when defendant was confronted by the two police officers outside the motel, he drew a loaded handgun from his waistband with the intent to shoot both officers, but he only managed to point it at one of the officers before they both shot him. By drawing the gun with the intent to shoot the officers, defendant performed an overt act sufficient to constitute an assault on both of them. Defendant did not have to perform the further act of actually pointing the gun directly at Officer Wagstaff to be guilty of assaulting Wagstaff. It was enough that defendant brought the gun into a position where he could have used it against Wagstaff if the officers had not shot him first.

Citing *People v. Williams* (2001) 26 Cal.4th 779, defendant contends his "single act of pointing a gun at Keller does not amount to an attempt to commit a battery on Wagstaff[]" because pointing a gun at Officer Keller was not the "last proximate step" toward completing a battery on Officer Wagstaff. Defendant contends that under Williams he "would have had to change the aim of his gun and/or move into a different position" to assault Officer Wagstaff. We disagree.

In differentiating the mental state required for assault from that required for criminal attempt, the *Williams* court noted that "criminal attempt 'need not be the last proximate or ultimate step toward commission of the substantive crime' . . . ." (*People v. Williams, supra*, 26 Cal.4th at p. 786, quoting *People v. Kipp* (1998) 18 Cal.4th 349, 376.) From this statement, defendant attempts to draw the corollary that an assault "must be the last proximate step to a complete battery . . . ." We do not discern any such holding from *Williams*, however.

In clarifying the mental state required for assault, the Supreme Court explained that an assault is an act done toward the commission of a battery and that "[a]n assault occurs whenever "'[t]he next movement would, at least to all appearance, complete

7

> the battery."'"  (*People v. Williams, supra*, 26 Cal.4th at p. 786, quoting Perkins & Boyce, Criminal Law (3d ed. 1982) p. 164, italics omitted.)  We do not understand this statement to mean that for the crime of assault to occur, the defendant must in every instance do everything physically possible to complete a battery short of actually causing physical injury to the victim.  Such a holding would be inconsistent with numerous precedents, including, but not limited to, *People v. McMakin, supra,* 8 Cal. 547, *People v. Hunter, supra,* 71 Cal.App.315, and *People v. Thompson, supra*, 93 Cal.App.2d 780.  As the Supreme Court explained in *McMakin*, an assault may be committed by "[h]olding up a fist in a menacing manner, drawing a sword or bayonet, [or] presenting a gun at a person who is within its range . . . ."  (*People v. McMakin, supra*, 8 Cal. at p. 548.)  Here, as explained above, the jury could have found beyond a reasonable doubt that defendant drew a loaded handgun from his waistband with the intent to shoot both of the police officers who were pursuing him.  Even following the Supreme Court's decision in *Williams*, that is sufficient to support both of defendant's convictions for assault.
>
> As for defendant's contention that he did not have the present ability to injure Officer Wagstaff because Wagstaff was in a "protected position" behind the corner of the building when the shooting occurred, that argument fails on the facts and on the law.  First, as noted above, Agent Moutinho testified that Wagstaff actually stepped into the open and directed a command at defendant before yelling "Gun" and diving for cover.  The jury could have found beyond a reasonable doubt that defendant had the ability to shoot Officer Wagstaff before he dove for cover.  Furthermore, both Agent Moutinho and Officer Keller testified that Officer Wagstaff fired at defendant from around the corner, which means, at the very least, part of Wagstaff's body was still exposed to injury from defendant's gun as the shooting occurred.  Second, the fact that Officer Wagstaff may had been sheltered, in whole or in part, by the building did not preclude the jury from finding defendant had the present ability to injure him.  "Once a defendant has attained the means and location to strike immediately he has the 'present ability to injure.'  The fact an intended victim takes effective steps to avoid injury has never been held to negate this 'present ability.'"  (*People v. Valdez* (1985) 175 Cal.App.3d 103, 113.)
>
> In summary, we conclude there was substantial evidence in the record to support the jury's finding that defendant was guilty of assault with a deadly weapon on Officer Wagstaff.

*Raviart*, 93 Cal.App.4th at 263-67.

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the

8

crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *See also Prantil v. State of Cal.*, 843 F.2d 314, 316 (1988). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). A petitioner in a federal habeas corpus proceeding "faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274, 1275 & n.13 (9th Cir. 2005). In order to grant the writ, the habeas court must find that the decision of the state court reflected an objectively unreasonable application of *Jackson* and *Winship* to the facts of the case. *Id.*

The court must review the entire record when the sufficiency of the evidence is challenged in habeas proceedings. *Adamson v. Ricketts*, 758 F.2d 441, 448 n.11 (9th Cir. 1985), *vacated on other grounds*, 789 F.2d 722 (9th Cir. 1986) (en banc), *rev'd*, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. *McMillan v. Gomez*, 19 F.3d 465, 469 (9th Cir. 1994). The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict. *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could reach the conclusion that these jurors reached." *Roehler v. Borg*, 945 F.2d 303, 306 (9th Cir. 1991). The federal habeas court determines the sufficiency of the evidence in reference to the substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16; *Chein*, 373 F.3d at 983.

9

Viewing the evidence in the light most favorable to the verdict, the undersigned concludes that there was sufficient evidence from which a reasonable trier of fact could have found beyond a reasonable doubt that petitioner was guilty of assault on Officer Wagstaff. Pursuant to California law, petitioner could be found guilty of assault on Officer Wagstaff, even if he only pointed his gun in the direction of Officer Keller, so long as the facts indicate an unlawful attempt, coupled with a present ability, to commit a violent injury on Officer Wagstaff. The facts of this case are subject to the interpretation that petitioner intended to shoot whichever officer he could, or both officers if possible, in order to escape, and that he could have done so if he had not been shot first. As explained by the California Court of Appeal, the fact that petitioner did not have time to point his gun at both officers before he was disabled does not preclude a finding that he was guilty of assault against Officer Wagstaff. The testimony at trial established that petitioner pulled out his gun and pointed it at one of the officers, and that he had the ability to shoot both of them. Under California law, this was sufficient to support petitioner's conviction on the assault charge. The state court opinion rejecting petitioner's claim in this regard is a reasonable construction of the evidence in this case and is not contrary to or an objectively unreasonable application of United States Supreme Court authority. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). *See also* 28 U.S.C. § 2254(d)(1). Accordingly, petitioner is not entitled to habeas relief.[2]

////

---

[2] Attached to the instant petition is a declaration under penalty of perjury by two family friends of petitioner's. The declarants state that they had a meeting with petitioner's defense counsel, who told them that Officers Keller and Wagstaff planted a gun at the scene to make it appear that petitioner shot at the officers. This evidence was not presented at petitioner's trial and is therefore irrelevant to petitioner's claim of insufficient evidence. Petitioner has also attached a summary of his medical records, which indicates that the "pose" of the gunshot victim (presumably petitioner) was "that of a runner with one arm up and one leg back." Pet. at last page; Traverse, Ex. V. Petitioner explains that this exhibit is significant because "the only inference to be drawn is that he was shot as he fled away from the police, not while rushing the police in an assault." Pet., Attach. at 2. This evidence is insufficient to demonstrate that the state court decision on petitioner's claim of insufficient evidence was an unreasonable application of federal law.

### 2. Instructional Error

Petitioner alleges the trial court incorrectly instructed the jury on assault. Specifically, he argues that *People v. Williams*, 26 Cal.4th 779 (2001), added a specific intent element to the crime of assault that was not included in his jury instructions. He states, "the jury instruction given in this case did not include a requirement that [petitioner] actually knew the officers were present, especially Wagstaff, who was hidden around the corner." Pet., Attach at 3. Petitioner argues that, because of this omission in the jury instructions, he was denied the right to a jury trial on the "mental state element" of assault. *Id.*

This claim was rejected by the California Court of Appeal on petitioner's direct appeal, and by the California Supreme Court without comment on petition for review. The California Court of Appeal concluded that any error in the jury instructions on assault was harmless. The court explained its reasoning as follows:

> Again relying on the Supreme Court's recent decision in *People v. Williams, supra,* defendant contends the jury instructions on assault were erroneous. In *Williams*, the court held that "assault requires actual knowledge of those facts sufficient to establish that the offending act by its nature would probably and directly result in physical force being applied to another." (*People v. Williams, supra*, 26 Cal.4th at p. 784.) Defendant contends the jury here was not instructed on the "actual knowledge" element of assault articulated in *Williams* and the error was not harmless beyond a reasonable doubt. Once again, we disagree.
>
> As the People point out, the assault instructions in this case included an "intent" component that was not included in the instructions given in *Williams*. Specifically, the court instructed the jury that to prove assault, it must be proved that "at the time the act was committed, the person intended to use physical force upon another person or to do an act that was substantially certain to result in the application of physical force upon another person. . . ." As defendant contends, however, this "intent" instruction did not instruct the jury on the "actual knowledge" element of assault because, like the instruction found wanting in *Williams*, this instruction could have permitted "a conviction premised on facts the defendant should have known but did not actually know." (*People v. Williams*, supra, 26 Cal.4th at p. 790.)
>
> The question, then, is whether the "minor ambiguity" in the instruction was harmless beyond a reasonable doubt. (*People v.*

11

> *Williams*, supra, 26 Cal.4th at p. 790.) Defendant contends it was not harmless because, properly instructed, the jury might have found that he did not know Officer Wagstaff was even present and therefore might have acquitted him of assaulting Officer Wagstaff. We disagree.
>
> Contrary to defendant's assertion, there is no evidence in the record to suggest he "did not know he was facing two officers on the sidewalk." Defendant did not testify. Accordingly, there is no direct evidence defendant was unaware of Officer Wagstaff's presence. Furthermore, defendant's suggestion he did not know of Wagstaff's presence because Wagstaff "was in a protected position around the corner" ignores the evidence of how Wagstaff got in that position in the first place. As noted above, Agent Moutinho testified Officer Wagstaff dove back to the corner of the building only after commanding defendant to put his hands up, or something like that, then yelling "Gun." This testimony supports the conclusion that defendant was indeed aware of Officer Wagstaff's presence and in fact drew his gun in response to Officer Wagstaff's commands. Finally, we note McPherson's testimony that when she stepped out of the motel room with defendant, she saw a lot of police coming around the corner and yelling. . . ." If McPherson saw more than one officer, it is certainly reasonable to conclude defendant did as well.
>
> Viewing the record in its entirety, we find no support for defendant's suggestion that the failure to instruct on the "actual knowledge" element of assault articulated in Williams was prejudicial. On the contrary, we conclude beyond a reasonable doubt the jury's assault verdicts would have been the same even if the assault instructions had included the "actual knowledge" element.

*Raviart*, 93 Cal.App.4th at 267-69.

On collateral review of a state court conviction, an error is not "harmless" if it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1992). In order to grant habeas relief where a state court has determined that a constitutional error was harmless, a reviewing court must determine: (1) that the state court's decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error precedent, and (2) that the petitioner suffered prejudice under *Brecht* from the constitutional error. *Fry v. Pliler*, ___ U.S. ___, 127 S.Ct. 2321, 2326 (2007); *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003); *Inthavong v. LaMarque*, 420 F.3d 1055, 1059 (9th Cir.

2005). Both of these tests must be satisfied before relief can be granted. *Fry,* 127 S.Ct. at 2326; *Inthavong*, 420 F.3d at 1061. Indeed, in federal habeas proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the "substantial and injurious effect" standard set forth in *Brecht*, whether or not the state appellate court recognized the error and reviewed it for harmlessness. *Fry*, 127 S.Ct. at 2328.

The California Court of Appeal's harmless error determination in this case was not "contrary to" established federal law. Under prevailing United States Supreme Court authority, a failure to instruct the jury on an element of the crime is subject to harmless error analysis. *Mitchell,* 540 U.S. at 16; *Neder v. United States*, 527 U.S. 1, 19 (1999). Omitting an element from a jury instruction is harmless if the element was uncontested and was supported by sufficient evidence such that the verdict would have been the same absent the error. *Neder*, 527 U.S. at 16.

For the reasons set forth in the opinion of the California Court of Appeal, petitioner has failed to demonstrate that the trial court's failure to give a jury instruction on the "actual knowledge" element of assault articulated in *Williams* was prejudicial. Even though the instructions given at petitioner's trial did not specifically inform the jurors that petitioner must have actual knowledge that Wagstaff was present in order to be found guilty of assault against him, the facts of this case leave little doubt that he did have that knowledge. As explained by the state appellate court, petitioner's companion observed "lots" of police officers after she exited the hotel room, and Officer Wagstaff ducked behind a wall after he shouted at petitioner and in response to petitioner's actions in displaying his firearm. The state court was not unreasonable to conclude that, in light of this evidence, the absence of an instruction on "actual knowledge" did not have a substantial and injurious effect on the verdict in this case. Accordingly, petitioner is not entitled to habeas relief on this claim. *Inthavong*, 420 F.3d at 1059.

////

////

### 3. **Judicial Questioning of Witness**

Petitioner's last claim is that his right to due process and a fair trial was violated when the trial court "committed misconduct by intervening in the questioning of several witnesses and aligning itself with the prosecution before the jury." Pet., Attach. at 5. Petitioner points to numerous instances in the trial record where the trial judge asked his own questions of the witnesses, both on direct and cross-examination, and rephrased some of the prosecutor's and defense counsel's questions. *Id.* at 5-8. He argues that the trial court's interference in the trial "amounted to assuming the prosecution's duties at trial and went beyond the court's power to control the proceedings and maintain order." *Id.* at 8.

The California Court of Appeal concluded that petitioner's claim in this regard was waived because of petitioner's failure to object to the trial judge's conduct in the trial court, and that the claim lacked merit in any event. The appellate court explained its reasoning as follows:

> "It is settled that a judge's examination of a witness may not be assigned as error on appeal where no objection was made when the questioning occurred." (*People v. Corrigan* (1957) 48 Cal.2d 551, 556.) Here, despite his contention that the trial court "consistently displayed a bias in favor of the prosecution," defendant never objected to the trial court's participation in the examination of witnesses. Accordingly, defendant has waived any claim of error.
>
> In any event, there is no merit in defendant's claim of error. "A court may control the mode of questioning of a witness and comment on the evidence and credibility of witnesses as necessary for the proper determination of the case. [Citations.] Within reasonable limits, the court has a duty to see that justice is done and to bring out facts relevant to the jury's determination. [Citation.] A court commits misconduct if it persistently makes discourteous and disparaging remarks so as to discredit the defense or create the impression it is allying itself with the prosecution." (*People v. Santana* (2000) 80 Cal.App.4th 1194, 1206-1207.)
>
> * * *
>
> The record in this case shows the trial court was involved in the examination of approximately half of the 40 witnesses who testified, almost all of whom testified for the prosecution. The question is whether the trial court, by involving itself in the examination of these witnesses, "took on the role of prosecutor rather than that of an impartial judge," "creat[ing] the

14

unmistakable impression it had allied itself with the prosecution in the effort to convict" defendant.  We find no such misconduct.

* * *

Here, it appears to us the trial court's participation in the examination of witnesses invariably involved questions seeking to clarify the testimony of the various witnesses and to fully develop the pertinent facts.  For example, during the direct examination of the prosecution's first witness, a clerk at a convenience store who said defendant was the person who robbed her, the clerk testified defendant had a canvas bag over his hand during the robbery.  The following exchange then occurred:

"Q.  Did the way he was holding his hand in the bag cause you to believe he might have a weapon?

"A.  Yes.  He told me that he did have a weapon.

"THE COURT:  What words did he use to tell you that?

THE WITNESS:  He said, 'Give me all you (sic) cash or I will blow your fucking head off.'"

The prosecution then resumed questioning the witness.

Defendant argues that "[i]n pressing the witness for a direct quote, the trial court put before the jury inflammatory language used by the robber . . . ."  Even if so, that is not enough to establish judicial misconduct.  There is no indication the trial court knowingly elicited the "inflammatory language" to which the witness testified.  The court simply asked the witness to state the exact words the robber used to tell her he had a weapon.  In doing so, the court performed its duty "to see that the evidence is fully developed before the trier of fact . . . ." (*People v. Carlucci, supra*, 23 Cal.3d at p. 255.)

It would serve little purpose to detail further the numerous instances in which the trial court participated in the examination of witnesses.  This court has thoroughly reviewed the transcript of the trial and each instance of the trial court's participation in the questioning of witnesses, and we are satisfied that the trial court's involvement did not constitute misconduct.  The trial court did not "persistently make[] discourteous and disparaging remarks so as to discredit the defense or create the impression it [was] allying itself with the prosecution." (*People v. Santana, supra*, 80 Cal.App.4th at pp. 1206-1207; cf. *Spruance v. Commission on Judicial Qualifications* (1975) 13 Cal.3d 778, 788-789, 797 [finding trial judge committed willful misconduct when he "expressed his disbelief in the testimony of a defendant by having created a sound commonly referred to as a 'raspberry.'"]  The court's questions

15

> were neither repetitious, disparaging, nor prejudicial. The court also did not belabor points of evidence that clearly were adverse to defendant. Defendant contends the trial court "consistently displayed a bias in favor of the prosecution" but offers no concrete example of any such bias, and we find none ourselves. As one commentator recently observed, "[a] judge does not become an advocate merely by asking questions." (Levenson, *Unnerving the Judges: Judicial Responsibility for the Rampart Scandal* (2001) 34 Loyola L.A. L.Rev. 787, 796.)
>
> "The duty of a trial judge, particularly in criminal cases, is more than that of an umpire; and though his power to examine the witnesses should be exercised with discretion and in such a way as not to prejudice the rights of the prosecution or the accused, still he is not compelled to sit quietly by and see one wrongfully acquitted or unjustly punished when a few questions asked from the bench might elicit the truth. It is his primary duty to see that justice is done both to the accused and to the people. He is, moreover, in a better position than the reviewing court to know when the circumstances warrant or require the interrogation of witnesses from the bench." (*People v. Golsh* (1923) 63 Cal.App. 609, 614-615.)
>
> Rather than resembling the "egregious" "instances of impropriety" that justified reversal of the judgment in *People v. Santana, supra,* the trial court's questions in this case resembled the "more innocuous incidents" the *Santana* court put aside. (80 Cal.App.4th at p. 1207.) Accordingly, we conclude no misconduct occurred.

*Raviart*, 93 Cal.App.4th at 272.

As described above, the California Court of Appeal concluded that petitioner's due process claim was waived because of petitioner's failure to object during trial to the judge's conduct. Respondent argues that the state court's finding of waiver constitutes a procedural bar precluding this court from addressing the merits of this claim. Answer at 12-15.

State courts may decline to review a claim based on a procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977). As a general rule, a federal habeas court "'will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Calderon v. United States District Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). The state rule is only "adequate" if it is "firmly

established and regularly followed." *Id.* (quoting *Ford v. Georgia*, 498 U.S. 411, 424 (1991)); *Bennett v. Mueller*, 322 F 3d 573, 583 (9th Cir. 2003) ("[t]o be deemed adequate, the state law ground for decision must be well-established and consistently applied.")  The state rule must also be "independent" in that it is not "interwoven with the federal law." *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the claims may be heard if the petitioner can show:  (1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or (2) that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 749-50.

Respondent has met his burden of adequately pleading an independent and adequate state procedural ground as an affirmative defense. *See Bennett*, 322 F.3d at 586.  Petitioner does not deny that his trial counsel did not raise a contemporaneous objection on due process grounds to the judge's questioning of the witnesses or his rephrasing of the prosecutor's and defense counsel's questions.  Although the state appellate court addressed petitioner's due process claim on the merits, it also expressly held that the claim was waived on appeal because of defense counsel's failure to object.  Petitioner has failed to meet his burden of asserting specific factual allegations that demonstrate the inadequacy of California's contemporaneous-objection rule as unclear, inconsistently applied or not well-established, either as a general rule or as applied to him. *Id.*; *Melendez v. Pliler*, 288 F.3d 1120, 1124-26 (9th Cir. 2002).  Petitioner's claims therefore appear to be procedurally barred. *See Coleman*, 501 U.S. at 747; *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004). *But cf. Webb v. Texas*, 409 U.S. 95, 97 (1972) (suggestion that petitioner or his counsel should have interrupted judge during his improper remarks to a witness to object was not a basis on which to ground waiver of petitioner's rights).  Petitioner has also failed to demonstrate that there was cause for his procedural default or that a miscarriage of justice would result absent review of the claim by this court. *See Coleman*, 501 U.S. at 748; *Vansickel v. White*, 166 F.3d 953, 957-58

(9th Cir. 1999). However, for the reasons discussed below, even if this claim is not procedurally barred, it lacks merit and should be denied.

Petitioner cites *Webb* in support of his claim of judicial misconduct. In that case, the trial judge "gratuitously singled out . . . one witness for a lengthy admonition on the dangers of perjury," thereby implying "that he expected [the witness] to lie." 409 U.S. at 97. The judge then proceeded to assure the witness "that if he lied, he would be prosecuted and probably convicted for perjury, that the sentence for that conviction would be added on to his present sentence, and that the result would be to impair his chances for parole." *Id.* The witness subsequently refused to testify. The United States Supreme Court concluded that the trial judge's remarks "effectively drove that witness off the stand." *Id.* at 98. The court held that the trial judge had, in effect, denied the defendant the right to present his own witnesses, thus violating his due process rights under the Fourteenth Amendment. *Id.*

In contrast, the trial judge in this case did not discourage any defense witnesses from testifying, suggest that any witness could be prosecuted for perjury if he/she lied, single out any particular witness, or coerce or threaten any witness. After a review of the trial record, this court agrees with the state appellate court that it appears the judge's questions were designed to clear up uncertainties and ambiguities in both the testimony and the questioning. Under *Webb* and its progeny, "[a] defendant's constitutional rights are implicated only where the prosecutor or trial judge employs coercive or intimidating language or tactics that substantially interfere with a defense witness' decision whether to testify." *United States v. Vavages*, 151 F.3d 1185, 1189-90 (9th Cir. 1998). That was not the case here. There is no evidence that the trial judge's actions had any impact on the substance of testimony by any witness. *Webb* is thus distinguishable and does not dictate the result in this case.

////

////

Further, the trial judge gave the jurors the following instruction:

> I have not intended by anything I have said or done or by any questions I may have asked or any ruling I may have made to intimate or suggest what you should find to be the facts or that I believe or disbelieve any witness.
>
> If anything I have done or said has seemed to so indicate, you will disregard it and form your own conclusions.

Answer at 16-17; Traverse at 14. This admonition would have effectively cured any possible prejudice resulting from the trial judge's questioning of witnesses.[3] *See Richardson v. Marsh*, 481 U.S. 200, 211 (1987) ("juries are presumed to follow their instructions"); *Aguilar v. Alexander*, 125 F.3d 815, 820 (9th Cir. 1997) (same).

On direct appeal in federal court, the standard for reversal based on general judicial misconduct is stringent – there must be an "extremely high level of interference by the trial judge which creates a pervasive climate of partiality and unfairness." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (internal quotations omitted). On habeas, the standard is even more stringent: relief is warranted only if "the state trial judge's behavior rendered the trial so fundamentally unfair as to violate federal due process. . ." *Id.* This court has carefully reviewed the record and concludes that the trial judge's involvement in the questioning of witnesses did not bespeak a bias in favor of the prosecution or otherwise render petitioner's trial fundamentally unfair. The state court's conclusion to the same effect is not contrary to or an unreasonable application of federal law. Accordingly, petitioner is not entitled to relief on this claim.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after

---

[3] The Clerk's Transcript on Appeal has not been provided to this court. However, both parties agree that this jury instruction was given at petitioner's trial. *See* Answer at 16-17; Traverse at 14.

19

1 being served with these findings and recommendations, any party may file written objections
2 with the court and serve a copy on all parties. Such a document should be captioned "Objections
3 to Magistrate Judge's Findings and Recommendations." Failure to file objections
4 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
5 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).
6 DATED: August 31, 2007.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE